**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Earl Richard Shupe,<br><br>    Petitioner,<br><br>v.<br><br>Pima County Adult Probation Department, et al.,<br><br>    Respondents. | No. CV-22-00529-TUC-RM<br><br>**ORDER** |

Pending before the Court is a Report and Recommendation ("R&R") by Magistrate Judge Michael A. Ambri (Doc. 22), recommending that this Court dismiss Petitioner Earl Richard Shupe's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus ("Amended Petition") (Doc. 7). Petitioner filed an Objection (Doc. 27), which is fully briefed (Docs. 28, 29).

**I.    Background**

Petitioner was convicted after a bench trial in the Pima County Consolidated Justice Court on June 11, 2019, of one count of misdemeanor assault. (Doc. 7-2 at 4; Doc. 18-1 at 14.)[1] The trial court sentenced him to 12 months of supervised probation and ordered him to attend 26 sessions of domestic violence offender treatment. (Doc. 7-2 at 4; Doc. 18-1 at 14.) The Pima County Superior Court affirmed his conviction on direct appeal. (Doc. 18-1 at 3-10.)[2] The Superior Court described the facts of Petitioner's case

---

[1] All record citations herein refer to the docket and page numbers generated by the Court's electronic filing system.
[2] Arizona law provides that a criminal defendant may appeal the final judgment of a justice court to the superior court. A.R.S. § 22-371(A).

as follows:[3]

> On July 29, 2018, Mr. Shupe was angry that his wife, Maria Shupe ("Mrs. Shupe") had received an order of protection against him and was considering divorce. He became more angry when Mrs. Shupe tried to prevent him from taking the family dog with him as he was leaving. Mr. Shupe put his hands around Mrs. Shupe's neck and strangled her. He also pushed Mrs. Shupe's sister, Maria Macias. Mr. Shupe then fled in his vehicle. Mrs. Shupe and her sister phoned the police to report the assaults. The State filed charges against Mr. Shupe, alleging two counts of misdemeanor assault under A.R.S. § 13-1203(A)(1).
>
> Prior to trial, after having worked with multiple attorneys, Mr. Shupe chose to represent himself. He filed multiple motions on his own behalf, including motions for production of SD cards, medical records and CDs; funds for expert witnesses, transcription of tape recordings; and to continue and stay the proceedings. On April 11, 2019, the trial judge set the case for trial on June 11, 2019, without objection from Shupe. On May 15, 2019, the trial court affirmed the trial date for an estimated length of one hour. On May 28, 2021, after Mr. Shupe requested more time for trial, the Court enlarged the time for trial to two hours.
>
> On June 11, 2019, the trial court conducted the bench trial. Mr. Shupe, representing himself, continuously interrupted as the trial judge tried to control the courtroom, and demonstrated confusion or lack of knowledge concerning applicable rules of evidence and trial procedure. Ultimately, when all evidence had been presented, the trial court found Mr. Shupe guilty of assault against Mrs. Shupe, and not guilty of assault against Mrs. Shupe's sister.

(Doc. 18-1 at 3-4.)

After the Superior Court affirmed his conviction, Petitioner filed a notice of appeal, but the Arizona Court of Appeals found that it lacked jurisdiction and dismissed the appeal. (Doc. 18-1 at 47, 49, 51.)[4] Petitioner avers that he filed a Rule 32 Petition for Post-Conviction Relief on May 9, 2022. (Doc. 7 at 4; Doc. 21 at 5.) In support of this averment, Petitioner points to a docket entry from his Pima County Consolidated Justice Court case labeled "CRM-PETITION." (Doc. 21-1 at 26.) He also submits an unsigned and undated Rule 32 Petition that does not bear a judicial time-stamp. (*Id.* at 30-56.)

---

[3] The state court's factual findings are entitled to a presumption of correctness, and Petitioner has failed to identify clear and convincing evidence to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1) (in a § 2254 habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence").

[4] With limited exceptions not relevant here, Arizona law does not allow for an appeal from the judgment of a superior court in an action appealed from a justice court. *See* A.R.S. § 22-375.

Petitioner claims that the Rule 32 Petition was denied by "minute entry." (Doc. 7 at 4; Doc. 21 at 5.) Petitioner avers that he did not appeal the denial. (Doc. 7 at 6; *see also* Doc. 21 at 5.)[5]

On January 4, 2023, Petitioner filed a petition for writ of mandamus, arguing that the trial court's requirement that he participate in domestic violence classes violated his right to religious freedom. (Doc. 18-1 at 53-56.) The petition was construed as a Rule 32 petition for post-conviction relief and was denied on June 12, 2023. (*Id.* at 61-62; Doc. 21-1 at 19-21.)

Petitioner initiated the above-captioned habeas action on November 22, 2022 (Doc. 1), and he filed the operative Amended Petition on January 27, 2023 (Doc. 7).[6]

## II.   Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

[5] The record is ambiguous concerning this post-conviction proceeding, but the Court need not attempt to resolve the ambiguity, because Petitioner avers that he did not seek review in the Pima County Superior Court of the dismissal of the Rule 32 petition (Doc. 7 at 6) and, therefore, Petitioner did not fairly present any claims raised in the Rule 32 petition to the highest available state court (Doc. 22 at 10-11).
[6] There is no dispute that Petitioner's federal habeas action is timely under 28 U.S.C. § 2244(d)(1). (*See* Doc. 18 at 6-7.)

The writ of habeas corpus affords relief to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to a petition for writ of habeas corpus filed by a state prisoner after April 24, 1996. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001). AEDPA provides that habeas relief will not be granted "with respect to any claim that was adjudicated on the merits" in state court unless the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Federal habeas claims are subject to the "exhaustion rule," which requires, with limited exceptions, that a petitioner exhaust state judicial remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). To exhaust a federal constitutional claim, a petitioner must provide the highest state court with a fair opportunity to consider the claim. *Weaver v. Thompson*, 197 F.3d 359, 363-64 (9th Cir. 1999). To fairly present a claim, the petitioner must alert the state court to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *see also Davis v. Silva*, 511 F.3d 1005, 1011 (9th Cir. 2008) (petitioner may alert state court

to federal nature of claim by citing federal case law). In the case of a petitioner in custody pursuant to a judgment imposed by the Pima County Justice Court, the highest state court available is the Pima County Superior Court. *See Bales v. Dupnik*, No. CV 12–00483–TUC–BPV, 2014 WL 1794277, at *3 (D. Ariz. May 6, 2014); A.R.S. § 22-375.

A claim is technically exhausted but procedurally defaulted if the petitioner failed to raise it in state court and independent and adequate state procedural rules would now bar the state court's consideration of the claim. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). A federal habeas court may not review a procedurally defaulted claim unless the habeas petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause," a petitioner must demonstrate that "some objective factor external to the defense impeded" the petitioner's "efforts to comply with the State's procedural rule." *Id.* at 753. To establish "prejudice," a petitioner must demonstrate actual, not possible, harm resulting from the alleged violation. *See Murray v. Carrier*, 477 U.S. 478, 494 (1986)). To establish a "fundamental miscarriage of justice," a petitioner must "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

### III. Jurisdiction

The in-custody requirement of 28 U.S.C. § 2254(a) "is jurisdictional and therefore it is the first question [the Court] must consider." *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010) (internal quotation marks omitted). To satisfy the in-custody requirement, a petitioner must show that he was serving a term of incarceration or probation pursuant to the conviction at issue at the time he filed his § 2254 petition. *Wright v. Alaska*, 47 F.4th 954, 956 (9th Cir. 2022). The petitioner's "subsequent release from custody does not itself deprive the federal habeas court of its statutory jurisdiction." *Bailey*, 599 F.3d at

979.

In a memorandum in support of his Amended Petition, Petitioner avers that, at the time of filing, he "remain[ed] to be under supervision" and that he "ha[d] yet to begin" his domestic violence classes and "thereby ha[d] on-going consequences of sentence." (Doc. 7-1 at 1.) Respondents aver in their Response to Petitioner's Amended Petition that Petitioner had not begun to serve his sentence of probation at the time he filed this habeas action, because the sentence was stayed until the appeal process was completed and/or abandoned, and Petitioner had a pending state-court post-conviction proceeding at the time he filed this action. (Doc. 18 at 3 n.2.)

The record reflects that, on July 5, 2019, the trial court suspended Petitioner's term of supervised probation until completion or abandonment of the appeal process. (Doc. 18-1 at 16.) It appears that the stay was lifted on November 6, 2022, shortly before Petitioner initiated this habeas action. (*See* Doc. 21-1 at 28.) Accordingly, the record indicates that at the time Petitioner initiated this habeas action, he was still serving his 12-month term of probation. Accordingly, the Court finds that it has jurisdiction under 28 U.S.C. § 2254(a).

**IV.     Objection to R&R**

In the R&R, Magistrate Judge Ambri finds that some of Petitioner's claims are non-cognizable on federal habeas review, some are procedurally defaulted, and others fail on the merits. (Doc. 22.) Petitioner raises specific objections to some but not all portions of the R&R. (Doc. 27.) The Court has reviewed all unobjected-to portions of the R&R for clear error and has found none.[7]

The Court reviews the objected-to portions of the R&R de novo, as follows.

---

[7] In Claim II of his Amended Petition, Petitioner argues that the trial court made arbitrary and capricious findings. (Doc. 7 at 7; Doc. 7-1 at 7-10.) The R&R finds that this claim is procedurally defaulted because, although Petitioner raised the claim in his direct appeal, he failed to inform the Superior Court of the federal nature of the claim. (Doc. 22 at 10-11.) In his Objection, Petitioner argues that Magistrate Judge Ambri failed to address the trial court's arbitrary and capricious findings; however, Petitioner does not raise any specific objections to the R&R's conclusion that this claim is procedurally defaulted. (*See* Doc. 27 at 10.) In the absence of a specific objection, the Court has reviewed the R&R's analysis of the procedural default of Claim II for clear error, and has found none.

- 6 -

### A. Claim I: Denial of Exculpatory Evidence

In Claim I of his Amended Petition, Petitioner alleges: "Stare Decisis; Denial of Exculpatory Evidence," including (1) denial of a Drexel Fire Department run report; (2) denial of funds to transcribe a tape recording; (3) denial of an SD card; and (4) denial of evidence that Mrs. Shupe was having an affair. (Doc. 7 at 5.)[8]

#### 1. Denial of Drexel Fire Department Run Report

In Claim I(1) of his Amended Petition, Petitioner argues that the trial court precluded him from introducing into evidence a "run report" from the Drexel Fire Department, which Petitioner avers would have shown that, upon the arrival of paramedics at the scene, Mrs. Shupe showed no signs of having been strangled. (Doc. 7 at 5; Doc. 7-1 at 2-5.) Petitioner asserts that the trial court's failure to allow him access to the run report violated his right to obtain impeachment evidence, his right to present a defense, and his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 7-1 at 3.) Petitioner raised this claim in his opening brief on direct appeal in the Pima County Superior Court (Doc. 21-1 at 72-73), although Respondents argue that he failed to sufficiently exhaust it as a federal constitutional claim (Doc. 18 at 12-13). The Superior Court interpreted the claim as asserting a *Brady* violation and rejected the claim on the merits, finding that Petitioner "failed to establish the existence of the report or that the State had access to it." (Doc. 18-1 at 8.) The Superior Court also found generally that Petitioner "failed to meet his burden of showing trial error," and "failed to establish a due process violation based upon the trial court's rulings on the admission of evidence at trial, judicial misconduct, or prosecutorial misconduct." (*Id.* at 5, 8.)

The R&R assumes without deciding that this claim was properly exhausted and recommends denying it on the merits, finding that the state court's rejection of the claim

---

[8] To the extent Petitioner argues in his Amended Petition that the trial court violated state law in failing to allow him to access and present the evidence at issue, the Court notes that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Accordingly, any arguments that the trial court violated state law are non-cognizable on federal habeas review.

- 7 -

was not unreasonable under AEDPA because Petitioner makes no showing that the Drexel fire department run report exists or that it contains exculpatory information. (Doc. 22 at 6-7.) The R&R further concludes that, even if the run report exists, it is unlikely that its admission at trial would have affected the verdict given the other evidence presented, including a photograph showing red marks on Mrs. Shupe's neck or collarbone, the testimony of Mrs. Shupe and her sister, and the police reports and medical records. (*Id.* at 7.) In his Objection, Petitioner argues that he is not required to prove the run report exists in order to gain access to it; he implies that the report must exist because the Drexel fire department was legally required to create the report; and he asserts that the report must be exculpatory because he did not strangle Mrs. Shupe and the paramedics' examination of her would show that she did not have signs of strangulation. (Doc. 27 at 2-4.)

Under *Brady*, the prosecution must disclose evidence in the government's possession if the evidence is material and favorable to the defendant. *Woods v. Sinclair*, 764 F.3d 1109, 1127 (9th Cir. 2014). To prevail on a *Brady* claim, a petitioner must prove (1) the evidence at issue is exculpatory or impeaching; (2) the prosecution willfully or inadvertently suppressed the evidence; and (3) "there is a reasonable probability that the result of the trial would have been different if the suppressed evidence had been disclosed to the defense." *Id.* (citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 289 (1999)) (internal quotation and alteration marks omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A habeas petitioner cannot establish a *Brady* claim by merely speculating that withheld evidence would have been favorable or material. *Runningeagle v. Ryan*, 686 F.3d 758, 767 (9th Cir. 2012).

Here, Petitioner merely speculates that the run report exists and that it contains exculpatory information, which is insufficient to establish a *Brady* claim. Furthermore, even if Petitioner could prove that the Drexel fire department's run report exists and that the report shows paramedics did not find "any of the over twenty symptoms" that

Petitioner asserts "a strangulation victim would exhibit" (Doc. 7-1 at 3), Petitioner still cannot show a reasonable probability that the result of his trial would have been different if the run report had been disclosed to him. Dr. Russell Madsen, the emergency room physician who treated Mrs. Shupe on July 29, 2018, testified at Petitioner's trial that he diagnosed Mrs. Shupe with a neck strain based on her reports of pain with movement and palpation, and that her MRI was negative for any bony abnormality of the cervical thoracic spine. (Doc. 1-4 at 3-4, 8.) Dr. Madsen further testified that the list of symptoms to which Petitioner refers are symptoms that a pathologist would normally see in someone who has been strangled to death, and that most patients who are only momentarily strangled will not show those symptoms. (*Id.* at 10.) If the Drexel fire department run report exists and shows that paramedics did not find the symptoms of strangulation to which Petitioner refers, the evidence would have been cumulative to Dr. Madsen's testimony and of low probative value. There is no reasonable probability that such evidence would have altered the result of Petitioner's trial, given the other testimony and evidence presented, including the testimony of Mrs. Shupe and her sister and the photographs of Mrs. Shupe taken shortly after the incident. The Pima County Superior Court's rejection of Petitioner's *Brady* claim was not contrary to or an unreasonable application of Supreme Court precedent, nor did the Superior Court's decision rest on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

To the extent Petitioner is arguing in Claim I(1) that the trial court erred in refusing to allow him to introduce the Drexel fire department run report into evidence, Petitioner is not entitled to habeas relief on that claim. "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). But "[a] defendant's right to present relevant evidence is not unlimited[.]" *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The Constitution leaves judges with "wide latitude to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues." *Crane*, 476 U.S. at 689-90 (1986)

(internal quotation and alteration marks omitted). Petitioner has not shown that the trial court's discretionary exclusion of evidence violated the Constitution or that the Pima County Superior Court's upholding of the trial court's evidentiary rulings was contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Brown v. Horell*, 644 F.3d 969, 983 (9th Cir. 2011) (noting that no Supreme Court case has squarely addressed or established a standard for evaluating a state court's discretionary exclusion of evidence in the context of a defendant's right to present a complete defense).

The Court will overrule Petitioner's Objection and adopt the R&R's recommendation to deny Claim I(1) of the Amended Petition.

### 2. Denial of Funds to Transcribe Tape Recording

In Claim I(2) of the Amended Petition, Petitioner argues that the trial court violated his constitutional right to present evidence by refusing to provide him with funds to transcribe a tape recording of a conversation he had with his wife two days prior to the alleged incident. (Doc. 7-1 at 5-6.) In his opening brief on direct appeal in the Pima County Superior Court, Petitioner argued that the denial of funds to transcribe the tape recording violated his due process right to impeach Mrs. Shupe. (Doc. 21-1 at 74.) The Superior Court interpreted this claim as a *Brady* claim and rejected it on the merits. (Doc. 18-1 at 8.) The Superior Court also found generally that Petitioner "failed to meet his burden of showing trial error," and "failed to establish a due process violation based upon the trial court's rulings on the admission of evidence at trial, judicial misconduct, or prosecutorial misconduct." (*Id.* at 5, 8.) The Superior Court noted that Petitioner never disclosed the tape recording at issue to the prosecution. (*Id.* at 7.)

The R&R assumes without deciding that this claim was properly exhausted and recommends denying it on the merits, finding that the state court's rejection of the claim was not unreasonable under AEDPA standards because Petitioner presents no evidence to support his assertion that the tape recording contains exculpatory material. (Doc. 22 at 7-8.) In his Objection, Petitioner argues that he could have used a transcript of the tape

recording to impeach Mrs. Shupe's credibility, because the recording shows that Mrs. Shupe had a propensity for violence and that she was delusional and mentally impaired. (Doc. 27 at 4-5.)

"[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). "[A] criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Id.* at 77. But here, there is no evidence in the record supporting Petitioner's self-serving assertions that the tape recording at issue contains relevant, exculpatory material. Petitioner has not even shown that the recording contains admissible evidence, much less that obtaining a transcription of the tape recording was integral to his ability to mount an effective defense. The Court will overrule Petitioner's Objection and adopt the R&R's recommendation to deny Claim I(2) of the Amended Petition.

### 3. Denial of SD Card

In Claim I(3) of his Amended Petition, Petitioner argues that the trial court violated his due process right to present evidence when it refused to allow him to introduce an SD memory card that Petitioner asserts he could have used to impeach Mrs. Shupe at trial. (Doc. 7-1 at 6.) In his opening brief on direct appeal in the Pima County Superior Court, Petitioner argued that the SD card constituted exculpatory impeachment evidence, and that "the deprivation of it to the [Petitioner] was a violation of his rights." (Doc. 21-1 at 76.) The Superior Court found generally that Petitioner "failed to meet his burden of showing trial error," and "failed to establish a due process violation based upon the trial court's rulings on the admission of evidence at trial, judicial misconduct, or prosecutorial misconduct." (Doc. 18-1 at 5, 8.)

The R&R assumes without deciding that this claim was properly exhausted and recommends denying it on the merits, finding that the state court's rejection of the claim was not unreasonable under AEDPA standards because Petitioner presents no evidence to

1  support his assertion that his wife lied about having an incriminating SD card. (Doc. 22
2  at 8-9.) In his Objection, Petitioner argues that he "needed not to provide proof of a
3  constitutional violation, only to provide proof that the SD card contained evidence of a
4  crime, and that said SD card could be used to impeach Ms. Shupe, and to support the
5  Petitioner as corroborative evidence of the creditability [sic] of Ms. Shupe as a witness."
6  (Doc. 27 at 5-6.)

7  Petitioner failed to properly exhaust this claim in state court. Although Petitioner
8  raised the claim in his direct appeal, he alleged only that the trial court's failure to order
9  production of the SD card violated his rights, without specifying any federal right. (*See*
10 Doc. 21-1 at 76.) Petitioner did not alert the state court to the fact that he was asserting a
11 claim under the United States Constitution. *See Duncan*, 513 U.S. at 365-66. Petitioner
12 cannot return to state court to exhaust the claim now. *See* Ariz. R. Crim. P. 32.2(a),
13 32.4(b)(3). The claim is procedurally defaulted, and Petitioner has not shown cause and
14 prejudice or a miscarriage of justice to overcome the procedural default. Even assuming,
15 as does the R&R, that this claim is properly exhausted, it fails on the merits because
16 Petitioner presents no evidence to support his assertions concerning the SD card.
17 Accordingly, the Court will overrule Petitioner's Objection and adopt the R&R's
18 recommendation to deny Claim I(3) of the Amended Petition.

### 4. Failure to Disclose Evidence of Affair

20 In Claim I(4) of the Amended Petition, Petitioner argues that the prosecution
21 failed to disclose to him that his wife was having an affair, which Petitioner argues shows
22 that Mrs. Shupe had a motive for filing false charges of domestic violence against him.
23 (Doc. 7-1 at 6.) In his opening brief on direct appeal in the Pima County Superior Court,
24 Petitioner argued that the prosecutor failed to disclose a romantic relationship in which
25 Mrs. Shupe was involved, and that the failure to disclose the relationship denied
26 Petitioner his right to effectively cross-examine Mrs. Shupe. (Doc. 21-1 at 81.) The
27 Superior Court found that Petitioner failed to establish a *Brady* claim because he "failed
28 to demonstrate that the State had evidence of an extra-marital affair," failed to

demonstrate how any such evidence "would be material to guilt or punishment," and failed to show "that the result of the proceeding probably would have been different had such evidence been disclosed." (Doc. 18-1 at 7-8.)

The R&R assumes without deciding that this claim was properly exhausted and recommends denying it on the merits, finding that the state court's rejection of the claim was not unreasonable under AEDPA standards because Petitioner presents no evidence to show that the prosecution had evidence of an affair at the time of his trial. (Doc. 22 at 9.) In his Objection, Petitioner argues that the prosecution was in contact, on numerous occasions, with a man named Mr. Atkinson, with whom Petitioner alleges Mrs. Shupe was having an affair. (Doc. 27 at 6.) Petitioner argues that evidence of an affair between Mr. Atkinson and Mrs. Shupe was exculpatory because it would have undermined Mrs. Shupe's testimony and character. (*Id.*)

Petitioner has failed to show that the Pima County Superior Court's rejection of this claim was contrary to or an unreasonable application of United States Supreme Court precedent, or that the Superior Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d). Petitioner has not presented evidence proving that the prosecution suppressed evidence of an affair between Mrs. Shupe and Mr. Atkinson, nor has Petitioner shown that the result of his trial probably would have been different had such evidence been disclosed. The Court will overrule Petitioner's Objection and adopt the R&R's recommendation to deny Claim I(4).

### B. Claim III: Prosecutorial Misconduct—Enlarged Photograph

In Claim III of his Amended Petition, Petitioner alleges that the prosecution committed misconduct in a variety of ways. (Doc. 7 at 8; Doc. 7-1 at 10-15.) The R&R addressed each subpart of Claim III (Doc. 22 at 11-12), but Petitioner raises a specific objection only to the R&R's analysis of the portion of Claim III that alleges the prosecution engaged in misconduct by introducing an enlarged photograph of red marks on Mrs. Shupe's collarbone area. (Doc. 27 at 6-8; *see also* Doc. 7-1 at 10-12.) In his

1 opening brief on direct appeal in the Pima County Superior Court, Petitioner argued that
2 the prosecution improperly submitted seven photographs that "appeared to be enhanced
3 and enlarged . . . to create an impression that the slight red marks on Mrs. Shupe['s]
4 collarbone, were actually on Mrs. Shupe's neck." (Doc. 21-1 at 79.)  The Superior Court
5 rejected this claim, finding that Petitioner did "not allege that the photographs were
6 altered in any way or that the person in the photographs was not Mrs. Shupe," and that
7 "[m]ere enlargement of a photograph does not constitute misconduct." (Doc. 18-1 at 7.)

The R&R recommends finding that the state court's rejection of the claim was not unreasonable under AEDPA standards because Petitioner has not shown that enlarging the photograph rendered the photographic evidence false. (Doc. 22 at 11-12.)  In his Objection, Petitioner avers that the prosecution enlarged a photograph showing "tiny red marks" on Mrs. Shupe's collarbone and, in doing so, made it appear as if the red marks were actually on Mrs. Shupe's neck. (Doc. 27 at 7.)

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State," violates the Fourteenth Amendment. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To prevail on a *Napue* claim, a habeas petitioner must show (1) that the evidence at issue "was actually false"; (2) that the prosecution knew or should have known that the evidence was false; and (3) that the false evidence was material. *Catlin v. Broomfield*, 124 F.4th 702, 741 (9th Cir. 2024).

Petitioner has not shown that the Pima County Superior Court's rejection of this claim was contrary to or an unreasonable application of United States Supreme Court precedent, or that the Superior Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Petitioner fails to explain how enlarging a photograph could alter it in such a way that red marks on a person's collarbone could instead appear to be on the person's neck, and the record does not support Petitioner's contention that the prosecution enlarged a photograph in a misleading manner.  During Petitioner's trial, Mrs. Shupe identified the photographs at issue and testified that they fairly and accurately showed her appearance

on July 29, 2018. (Doc. 1-2 at 49-50; Doc. 1-3 at 1-3.) The only reference to an enlarged photograph that this Court has been able to locate in the trial transcript occurred during Petitioner's closing argument, when Petitioner himself attempted to show the trial court a "close-up" of a photograph of Mrs. Shupe, arguing that "on close-up," the photograph did not show red marks on Mrs. Shupe's neck. (Doc. 1-5 at 24-25.) The trial court noted that there was no "close-up" of the photograph in evidence. (*Id.* at 25.)

Petitioner attached two photographs to his original § 2254 Petition in the above-captioned case, with notations indicating the first photograph was the original version of the prosecution's Exhibit 3 before enlargement, and the second photograph was a "fbracated [sic] enlargement of original State[']s exhbit [sic] 3." (Doc. 1-7 at 50-51.) However, the second photograph appears to be a different photograph taken at a slightly different angle, rather than an enlargement of the first photograph. (*See id.*) The photographs are not marked as trial exhibits, and the record lacks sufficient foundation for the Court to determine whether the photographs were part of the state-court record and whether Petitioner's notations are accurate.

Because the Pima County Superior Court's rejection of this claim was reasonable under AEDPA standards, the Court will overrule Petitioner's Objection and adopt the R&R's recommendation to deny Claim III of the Amended Petition.

**IT IS ORDERED** that Petitioner's Objection (Doc. 27) is **overruled**, and Magistrate Judge Ambri's Report and Recommendation (Doc. 22) is **accepted and adopted**, as set forth above.

**IT IS FURTHER ORDERED** that Petitioner's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 7) is **denied**. The Clerk of Court is directed to enter final judgment in favor of Respondents and terminate the above-captioned case.

. . . .

. . . .

. . . .

1      **IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases and 28 U.S.C. § 2253(c), the Court declines to issue a certificate of appealability, because Petitioner has not made a substantial showing of the denial of a constitutional right, and reasonable jurists would not find the Court's ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

    Dated this 10th day of March, 2025.

_____
Honorable Rosemary Márquez
United States District Judge